### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ALEKSANDAR KARADZIC, *et al.*, <br><br>   Plaintiffs, <br><br>  v. <br><br>ANDREA M. GACKI, *et al.*, <br><br>   Defendants. | Civil Action No. 23-cv-1226 (TSC) |

### <u>MEMORANDUM OPINION</u>

In 2023, Plaintiff Ljiljana Karadzic and her children, Aleksandar and Sonja Karadzic, petitioned the Office of Foreign Assets Control ("OFAC") to be removed from its Specially Designated Nationals ("SDN"). In May 2023, she filed this action claiming OFAC unreasonably delayed adjudicating her request in violation of the Administrative Procedure Act ("APA"). OFAC denied her request in October 2023, concluding that there was sufficient evidence to support her designation. Having considered the administrative record and the briefs, the court will GRANT Defendants' motion to dismiss and will DENY as moot Plaintiff's motion for summary judgment.

### I.  BACKGROUND

Bosnia and Herzegovina were home to "mass atrocities" in the early 1990s. AR82. "Reports depicted horrendous crimes, in which thousands of civilians were being killed and wounded, tortured and sexually abused in detention camps and hundreds of thousands expelled from their homes," causing "outrage across the world." AR82. "While estimates vary widely, some 200,000 people are believed to have died in the war in Bosnia, while as many as two million were displaced." AR91.

The presidents of the Republic of Bosnia and Herzegovina, the Republic of Croatia, and the Federal Republic of Yugoslavia reached a peace agreement in November 1995 known as the Dayton Accords.  *See* United Nations*, Letter dated 29 November 1995 from the Permanent Representative of the United States of America to the United Nations addressed to the Secretary-General* (Nov. 30, 1995), https://tinyurl.com/5bjeatzy.  The Peace Implementation Conference, held in London in December 1995, further cemented the ceasefire and provided steps for "creating a State that will bring the peoples of Bosnia and Herzegovina together within a social and political framework that will enable the country to take its rightful place in Europe."  *See* United Nations Security Council, *Letter dated 11 December 1995 from the Permanent Representative of the United Kingdom of Great Britain and Northern Ireland to the United Nations Addressed to the Secretary-General* at 2 (Dec. 12, 1995), https://tinyurl.com/4ncr2v9d.

In 1993, the United Nations created the International Criminal Tribunal for the former Yugoslavia to provide legal recourse for the "war crimes that took place during the conflicts." AR81.  Among those indicted by the tribunal was Radovan Karadzic—the founding member of the Serbian Democratic Party and former President of the Serbian Republic of Bosnia and Herzegovina.  AR77.  In 1995, he was indicted on two counts of genocide, five counts of crimes against humanity, and four counts of war crimes.  *Id.*  He was "the subject of a massive international manhunt" until his arrest in Serbia in 2008.  Am. Compl., ECF No. 13 ¶ 8; *see* AR74–75.  He was ultimately tried, convicted, and sentenced to 40 years of imprisonment. AR77–79; AR93.

Under the International Emergency Economic Powers Act, upon declaring a national emergency, the U.S. President may "regulate, direct and compel, nullify, void, prevent or prohibit" transferring or "exercising any right, power, or privilege with respect to, or transactions

involving, any property in which any foreign country or a national thereof has any interest" that is "subject to the jurisdiction of the United States."  50 U.S.C. § 1702(a)(1)(B); *see id.* § 1701. In 2003, President Bush used this authority to enact Executive Order 13304, which provided an annex of individuals whose property and interests were blocked by the President and authorized the Secretary of the Treasury, in consultation with the Secretary of State, to block property and interests in property of persons they determine "have actively obstructed, or pose significant risk of actively destructing . . . the Dayton Accords or the Conclusions of the Peace Implementation Conference" or "have materially assisted in, sponsored, or provided financial, material, or technological support for, or goods or services in support of . . . any person listed in or designated pursuant to this order."  Executive Order 13304: Termination of Emergencies with Respect to Yugoslavia and Modification of Executive Order 13219 of June 26, 2001, 68 Fed. Reg. 32315, 32316 (May 28, 2003).  Radovan Karadzic was one of the individuals listed in the annex.  *Id.* at 32319.

The Secretary of the Treasury's authority under Executive Order 13304 was delegated to OFAC, which maintains a list of individuals or entities whose assets are blocked, including under Executive Order 13304, which is known as the SDN list.  31 C.F.R. §§ 588.802, 501.807. Anyone on the list may "submit a petition for administrative reconsideration" of OFAC's decision.  *Id.*  OFAC "conduct[s] a review of the request" and provides the requesting person with "a written decision."  *Id.* § 501.807(b)(3).  It does not limit the number of times a person may seek reconsideration.  *See id.*

Plaintiff Ljiljana Karadzic is Radovan Karadzic's wife.  Am. Compl. ¶ 8.  While he was still at large, she and the two children she shares with him—Aleksandar Karadzic and Sonja Karadzic—were placed on the SDN list because they were "suspected of helping" him "evade

arrest." *Id.* ¶¶ 9–10; *see* Compl., ECF No. 1 ¶ 6. All three, however, maintain that they "never provided any support to assist Radovan Karadzic to evade arrest," and that, even if they had, "the circumstances that led to [their] placement on the SDN list no longer apply after [his] arrest." Am. Compl. ¶¶ 12–13; Compl. ¶¶ 9–10. Consequently, in April 2020, they sought to have the decisions placing them on the list "reconsidered and rescinded" pursuant to 31 C.F.R. § 501.807. Am. Compl. ¶ 15; Compl. ¶ 12.

Frustrated with the time it was taking to receive a response from OFAC, Plaintiffs filed this suit in May 2023 against OFAC and its Director, seeking declaratory and injunctive relief requiring OFAC to adjudicate their requests to be removed from the SDN list. *See* Am. Compl. ¶ 28. Several months later, in October 2023, OFAC granted Aleksandar and Sonja Karadzic's requests to be removed from the SDN list, but denied Ljiljana Karadzic's, concluding that she "has actively obstructed or poses a significant risk of actively obstructing" the Dayton Accords or the Conclusions of the Peace Implementation Conference. *Id.* ¶¶ 29–30. Ljiljana Karadzic subsequently filed an Amended Complaint without her children, once again challenging OFAC's delay in adjudicating her request as violating the APA. *See id.* ¶¶ 42–53. She moved for summary judgment, and Defendants moved to dismiss, or, in the alternative, for summary judgment.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

#### i.     *Rule 12(b)(1)*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss any claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A live case or controversy is critical to the court's subject matter jurisdiction. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64, 67 (1997). In assessing a motion to dismiss, the court must "accept all

of the factual allegations in the complaint as true," *Jerome Stevens Pharms. Inc. v. FDA*, 402

F.3d 1249, 1250 (D.C. Cir. 2005) (citation omitted), and construe the complaint "in the light

most favorable to" the non-moving party, *Navab-Safavi v. Glassman*, 637 F.3d 311, 382 (D.C.

Cir. 2011).  That said, because the court has "an affirmative obligation to ensure that it is acting

within the scope of its jurisdictional authority," the "factual allegations in the complaint . . . will

bear closer scrutiny [than those allegations would] in resolving a 12(b)(6) motion for failure to

state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14

(D.D.C. 2001) (quotation marks and citation omitted).  Moreover, the court need not accept

"legal conclusions that are cast as factual allegations." *Schmidt v. U.S. Capitol Police Bd.*, 826

F. Supp. 2d 59, 65 (D.D.C. 2011) (citation omitted).

   *ii.*  *Rule 12(b)(6)*

   Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation omitted).  In other words, the plaintiff must plead "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citation omitted).  The court presumes the truth of the complaint's

factual allegations under Rule 12(b)(6), *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113

(D.C. Cir. 2000), but need not "accept as true 'a legal conclusion couched as a factual

allegation,'" nor "inferences [that] are unsupported by the facts set out in the complaint,"

*Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).

### B.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a), which typically supplies the legal standard on summary judgment, does not apply to motions for summary judgment seeking APA review "because of the court's limited role in reviewing the administrative record." *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). Instead, the court must decide as a matter of law "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* at 240.

This court is "highly deferential" to agency action, *Envt'l. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981), only setting it aside if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2). The plaintiff bears the burden of establishing that the agency's action is invalid. *Fulbright v. McHugh*, 67 F. Supp. 3d at 81, 89 (D.D.C. 2014).

### III.    MOOTNESS

### A.    Legal Framework

"Article III, § 2, of the Constitution confines federal courts to the decision of 'Cases' or 'Controversies.'" *Arizonans for Off. Eng.*, 520 U.S. at 64. A key aspect of the case or controversy requirement is standing. *See id.* To have standing, "the plaintiff must have suffered an 'injury in fact,'" "there must be a causal connection between the injury and the conduct complained of," and "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted).

This "actual controversy" must exist "at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng.*, 520 U.S. at 67 (citation omitted). The mootness doctrine analyzes whether standing continues throughout the existence of the case. *Id.* at 68 n.22

("Mootness has been described as 'the doctrine of standing set in a time frame.'").  If the court concludes that "an intervening circumstance" has deprived the court of jurisdiction "at any point during the litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (citation omitted).  Because both standing and mootness are aspects of Article III jurisdiction, the court may find a claim moot without first analyzing Plaintiff's standing. *Arizonans for Off. Eng.*, 520 U.S. at 66–67.

"A case is moot if a 'decision will neither presently affect the parties' rights nor have a more-than speculative chance of affecting them in the future.'" *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024); *see Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019) (a case "becomes moot if intervening events make it impossible for [the court] to grant 'effectual relief' to the prevailing party").  A case may become moot when, for example, a challenged rule is withdrawn, or Congress passes a statute that alters a challenged agency action's effect. *See, e.g.*, *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 646–47 (D.C. Cir. 2011) (passage of the Clarification Act nullified an FTC policy statement).

An exception to the mootness doctrine applies if a dispute is capable of repetition, yet evading review.  *See Turner v. Rogers*, 564 U.S. 431, 439 (2011).  "A dispute falls into that category . . . if '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *Id.* at 439–40 (citation omitted); *accord Pharmachemie B.V. v. Barr Lab'ys, Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002) (requiring a "reasonable degree of likelihood that the issue will be the basis of a continuing controversy between these two parties" (citation omitted)).  The paradigmatic example of disputes capable of repetition, yet evading review arise in cases involving pregnant women. *See, e.g.*, *Roe v. Wade*,

410 U.S. 113, 125 (1973), *rev'd on other grounds by Dobbs v. Jackson Women's Health Org.*,

597 U.S. 215 (2022). These disputes are capable of repetition because pregnancy "often comes

more than once" to the same person, yet evade review because litigation typically takes longer

than "the normal 266-day human gestation period." *Id.*

    **B.**    **Plaintiff's Claims Are Moot**

    Plaintiff's claims are moot. OFAC has adjudicated her request for removal from the

SDN list, Am. Compl. ¶¶ 29–30, so any decision on the merits of her APA claims "will neither

presently affect the parties' rights nor have a more-than-speculative chance of affecting them in

the future," *Pub. Citizen, Inc.*, 92 F.4th at 1128; *see Am. Bar Ass'n*, 636 F.3d at 646–47.

Moreover, her claims are not capable of repetition, yet evading review. Nothing in the record

indicates that requests for removal from the SDN list are "too short" in duration "to be fully

litigated" prior to "cessation or expiration." *Turner*, 564 U.S. at 439–40 (citation omitted). For

example, Plaintiff's own request was pending before OFAC for three years before she even filed

suit. Am. Compl. ¶¶ 15, 28. Indeed, Plaintiff herself acknowledges that every court to be faced

with this fact pattern—where a suit was brought claiming unreasonable delay and then OFAC

adjudicated the plaintiff's request—has dismissed the case as moot. Pl.'s Mem. of P. & A. in

Resp. to Defs.' Mot. to Dismiss & in Reply to Defs.' Opp'n to Pl.'s Mot. for Summ. J., ECF

No. 20 at 8 ("Pl.'s Reply") (citing cases).

    Plaintiff disagrees. She first contends her claims are not moot because she seeks

declaratory judgment. *Id.* at 9. That argument is unavailing. "The Article III case or

controversy requirement is as applicable to declaratory judgments as it is to other forms of

relief." *Conyers v. Reagan*, 765 F.3d 1124, 1127 (D.C. Cir. 1985). "In determining whether a

request for declaratory relief has become moot, 'the question is whether the facts alleged, under

all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* at 1128 (citation omitted). Because OFAC has already adjudicated Plaintiff's request to be removed from the SDN list, there is no "substantial controversy" of "immediacy and reality" regarding whether OFAC unreasonably delayed. *See id.* Moreover, Plaintiff does not just seek declaratory relief—she also asks the court to "[s]et aside OFAC's decision and order OFAC to remove Ljiljana Zelen Karadzic from the SDN list." Am. Compl. ¶ 54(b).

Plaintiff also argues that her claims are capable of repetition because her counsel filed a declaration explaining that she would file another request to be removed from the SDN list. Pl.'s Reply at 9; *see* Decl. of Peter Robinson, ECF No. 16-2. While that may be true, the court nonetheless need not decide whether Plaintiff's claims are capable of repetition because it concludes they do not evade review, and therefore cannot qualify for this mootness exception.

Plaintiff counters that disputes like hers evade review because OFAC issues decisions on delisting requests only once "a sanctioned person file[s] a complaint in [a] U.S. District Court alleging unreasonable delay," Pl.'s Reply at 8, 11, and otherwise takes "in excess of two years to decide" such requests, *id.* at 10–11. Even if Plaintiff's assertions are true, they go the merits of unreasonable delay—not whether the dispute evades review. Indeed, the D.C. Circuit has held that agency actions that typically are of "*less than* two years' duration cannot be 'fully litigated' prior to cessation or expiration." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (citation omitted; emphasis added). Plaintiff admits that her application took about three and a half years to be resolved, Am. Compl. ¶¶ 15, 29–30, and most take "*in excess of* two years," Pl.'s Reply at 10–11 (emphasis added). Plaintiff has consequently not

shown that OFAC's delay in adjudicating her request for removal from the SDN list evades review, and her claims are moot.

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 19, and DENY as moot Plaintiff's Motion for Summary Judgment, ECF No. 16.  An Order will accompany this Memorandum Opinion.

Date: September 20, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge