# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LJILJANA ZELEN KARADZIC,<br><br>   Plaintiff,<br><br> v.<br><br>LISA PALLUCONI, in her official capacity as Acting Director, Office of Foreign Assets Control, *et al.*,<br><br>   Defendants. | Civil Action No. 23-cv-1226 (TSC) |

## **MEMORANDUM OPINION**

In 2020, Plaintiff Ljiljana Karadzic and her children petitioned the Office of Foreign Assets Control ("OFAC") to be removed from its Specially Designated Nationals and Blocked Persons List ("SDN List"). In May 2023, they filed this action, claiming that OFAC had unreasonably delayed adjudicating their delisting request, Compl., ECF No. 1. In October 2023, OFAC denied their delisting request.

On November 9, 2023, after her children declined to pursue the litigation, Plaintiff filed an Amended Complaint, claiming OFAC unreasonably delayed adjudicating her delisting request (Count I) and unreasonably decided to deny her delisting request (Count II)—both in violation of the Administrative Procedure Act ("APA")—and requested attorneys' fees (Count III). Am. Compl. ¶¶ 42–53, ECF No. 13.

On September 20, 2024, the court granted Defendants' Motion to Dismiss, ECF No. 19 ("Defs.' Mot."), and denied as moot Plaintiff's Motion for Summary Judgment, ECF No. 16 ("Pl.'s MSJ"), finding that Count I was rendered moot when OFAC decided Plaintiff's delisting request. *Karadzic v. Gacki*, No. 23-CV-1226 (TSC), 2024 WL 4253132, at *1, *4 (D.D.C. Sept. 20, 2024).

Page **1** of **16**

Plaintiff now moves for relief from judgment under Federal Rule of Civil Procedure 60(b)(1) of Count II.[1] Pl.'s Mot. for Recons., ECF No. 31 ("Pl.'s Recons. Mot."). Because the court did not address Count II in its Memorandum Opinion, the court will GRANT Plaintiff's Motion for Reconsideration. But after re-consideration of the administrative record and the briefs, the court will DENY Plaintiff's motion for summary judgment on Count II and will GRANT Defendants' cross-motion for summary judgment as to Count II.

## I. BACKGROUND

### A. Historical Background

The court set forth the relevant background in its September 2024 Memorandum Opinion. Plaintiff is the wife of Radovan Karadzic—a founding member of the Serbian Democratic Party and former President of the Serbian Republic of Bosnia and Herzegovina. Am. Compl. ¶ 8. In 1995, he was indicted by the International Criminal Tribunal for the former Yugoslavia ("ICTY") on two counts of genocide, five counts of crimes against humanity, and four counts of war crimes. AR77. He was "the subject of a massive international manhunt" until his arrest in Serbia in 2008. Am. Compl. ¶ 8; *see* AR74–75. He was ultimately tried, convicted, and sentenced to life imprisonment. AR77–79; AR93.

### B. Statutory & Regulatory Background

In 2003, President Bush issued Executive Order 13304 ("EO 13304"), which both provided an annex of individuals whose property and interests were blocked by the President and authorized the Secretary of the Treasury, in consultation with the Secretary of State, to block property and interests in property of persons they determine "have actively obstructed, or pose [a] significant

---

[1] Because Plaintiff was not the "prevailing party," she does not dispute the court's denial of summary judgment on Count III. See Pl.'s Recons. Mot. at 3 n.1.

risk of actively obstructing . . . the Dayton Accords or the Conclusions of the Peace Implementation Conference" or "have materially assisted in, sponsored, or provided financial, material, or technological support for, or goods or services in support of . . . any person listed in or designated pursuant to this order." Executive Order 13304: Termination of Emergencies with Respect to Yugoslavia and Modification of Executive Order 13219 of June 26, 2001, 68 Fed. Reg. 32315, 32316 (May 28, 2003). Radovan Karadzic was one of the individuals listed in the annex. *Id.* at 32319.

The Secretary of the Treasury's authority under EO 13304 was delegated to OFAC, which maintains a list of individuals whose assets are blocked, known as the SDN List. 31 C.F.R. §§ 588.802, 501.807. Anyone on the list may "submit a petition for administrative reconsideration" of OFAC's decision. *Id.* OFAC "conduct[s] a review of the request" and provides the requesting person with "a written decision." *Id.* § 501.807(b)(3).

### C. Factual & Procedural Background

While Radovan Karadzic was still at large, Plaintiff and their two children—Aleksandar and Sonja—were placed on the SDN List because they were "suspected of helping" him "evade arrest." Am. Compl. ¶¶ 9–10; *see* Compl. ¶¶ 6–7. In April 2020, they sought to have the decisions placing them on the list "reconsidered and rescinded" pursuant to 31 C.F.R. § 501.807. Am. Compl. ¶ 15; Compl. ¶ 12. Frustrated with the time it was taking to receive a response from OFAC, in May 2023, Plaintiff and her children filed this suit seeking declaratory and injunctive relief requiring OFAC to adjudicate their delisting requests. *See* Am. Compl. ¶ 28.

In October 2023, OFAC ultimately denied Plaintiff's request concluding that she "actively obstructed or poses a significant risk of actively obstructing" the Dayton Accords or the Conclusions of the Peace Implementation Conference. Am. Compl. ¶¶ 29–30; *see* AR1–3.

Plaintiff subsequently filed an Amended Complaint without her children, once again challenging OFAC's delay in adjudicating her request and the decision denying her request. *See* Am. Compl. ¶¶ 42–53. Plaintiff moved for summary judgment, and Defendants moved to dismiss, or, in the alternative, for summary judgment.

On September 20, 2024, the court granted Defendants' motion to dismiss, finding that Count I was rendered moot when OFAC decided Plaintiff's delisting request after this lawsuit was filed and dismissed Plaintiff's motion for summary judgment as moot. Six days later, on September 26, 2024, Plaintiff moved for reconsideration pursuant to Federal Rule of Civil Procedure 60(b)(1), arguing that the court failed to address Count II in its Memorandum Opinion. Pl.'s Recons. Mot. at 1. Defendants respond that the court "reached the correct result in dismissing Plaintiff's Amended Complaint," but agree that Count II remains ripe for adjudication on the merits and thus do not oppose Plaintiff's Rule 60(b) motion. *See* Defs.' Resp. to Pl.'s Recons. Mot. at 2, ECF No. 32. Plaintiff also proposed minor factual corrections, which Defendants did not oppose and which are incorporated into this Memorandum Opinion.

## II.  LEGAL STANDARD

### A. Motion for Reconsideration

Under Federal Rule of Civil Procedure 60(b), a "court may relieve a party . . . from a final judgment" because of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), as well as "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). District courts have discretion over whether to grant Rule 60(b) motions. *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993).

Federal Rule of Civil Procedure 59(e) provides that a party may move to "alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A

Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted). Courts will treat a motion for reconsideration under Rule 60(b) as a motion for reconsideration under Rule 59(e) if it has been filed within 28 days of the order at issue. *Li v. Blinken*, No. 22-CV-2331 (TSC), 2024 WL 5044581, at *2 (D.D.C. Sept. 23, 2024).

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that are not final judgments. *See Campbell v. U.S. Dep't of Justice*, 231 F. Supp. 2d 1, 6 n. 8 (D.D.C. 2002) (Rule 54(b) "addresses interlocutory judgments"); *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 (D.D.C. 2004) (finding an order was "interlocutory because it denied a motion for summary judgment and did not dispose of the entire case on the merits"); *APCC Servs.*, 281 F. Supp. 2d at 44 (explaining that Rule 54(b) governs the disposition of requests for reconsideration of interlocutory orders). Rule 54(b) provides that:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Courts have more flexibility in applying Rule 54(b) than in determining whether reconsideration is appropriate under Rule 59(e) and 60(b). *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (citation and internal quotation marks omitted). Courts in this district have held that Rule 54(b) reconsideration may be granted "as justice requires." *Id.* (collecting cases).

**B. Summary Judgment**

Although styled as cross-motions for summary judgment, the submissions in this case seek review of an administrative decision. Federal Rule of Civil Procedure 56(a), which typically supplies the legal standard on summary judgment, does not apply to motions for summary judgment seeking APA review "because of the court's limited role in reviewing the administrative record." *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). In an APA case, the court "sits as an appellate tribunal" for the agency when evaluating a motion for summary judgment, rather than deciding whether there are genuine disputes of material fact. *Am. Bioscience Inc., v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

Instead, the court must decide as a matter of law "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *McHugh*, 968 F. Supp. 2d at 240. "The entire case on review is a question of law," and the court should only consider "arguments about the legal conclusion to be drawn about the agency action." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

### III.   ANALYSIS

**A. Plaintiff's Motion for Reconsideration**

Plaintiff filed an unopposed Motion for Reconsideration under Federal Rule of Civil Procedure 60(b). Pl.'s Recons. Mot. at 1. Given that the court's Memorandum Opinion and Order "adjudicates fewer than all the claims" in this case, the court will grant Plaintiff's Motion under Federal Rule of Civil Procedure 54(b) to address Count II of Plaintiff's Amended Complaint and "so that the parties may benefit from a clearer understanding of the [c]ourt's reasoning." Defs.' Resp. to Pl.'s Recons. Mot. at 2; Fed. R. Civ. P. 54(b).

B. **APA Review**

i. **Legal Framework**

Plaintiff alleges that OFAC's decision to deny her delisting request was arbitrary and capricious in violation of the APA. Under the APA, a court will set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, [] otherwise not in accordance with law," contrary to statute, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A). In an arbitrary and capricious challenge, the central question is whether the agency's decision was "the product of reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 52 (1983).

An agency action is arbitrary or capricious if the agency relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before it, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Id.* at 43. In addition, "agency action may be set aside as arbitrary and capricious if the agency fails to 'comply with its own regulations.'" *Nat'l Env't. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (quoting *Environmentel, LLC v. FCC*, 661 F.3d 80, 85 (D.C. Cir. 2011)).

Judicial review of agency action is "highly deferential . . . the court presumes the validity of agency action" and must affirm the agency action unless it "failed to consider relevant factors or made a clear error in judgment." *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 507 (D.C. Cir. 2020) (quoting *Cellco P'ship v. FCC*, 357 F.3d 88, 93–94 (D.C. Cir. 2004)).

The court's review is even more deferential where, as here, matters of foreign policy and national security are concerned. *Olenga v. Gacki*, 507 F. Supp. 3d 260, 280 (D.D.C. 2020). The D.C. Circuit has urged courts to be "extremely deferential" to executive blocking orders, and

decisions "at the intersection of national security, foreign policy, and administrative law." *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007); *see also Olivares v. TSA*, 819 F.3d 454, 462 (D.C. Cir. 2016) ("[W]e defer to the informed judgment of agency officials whose obligation it is to assess risks to national security.").

### ii.  OFAC's Decision Was Not Arbitrary or Capricious

Plaintiff challenges OFAC's determination that she continues to meet the criteria for designation pursuant to EO 13304 and the resulting denial of her delisting request, arguing that OFAC's decision "was unreasonable, and therefore arbitrary and capricious." Pl.'s MSJ at 32. As discussed below, based on the record evidence, and applying the highly deferential standard of agency action review for this case, the court finds that OFAC's decision to deny Plaintiff's delisting request was neither arbitrary nor capricious and based on substantial evidence.

In its October 2023 denial decision, OFAC concluded that pursuant to EO 13304, Plaintiff "has actively obstructed or poses a significant risk of actively obstructing the Dayton Accords or the Conclusions of the Peace Implementation Conference . . . , including the decisions or conclusions of the High Representative, the Peace Implementation Council or its Steering Board," relating to Bosnia and Herzegovina.[2] AR2, 21–26. In its determination, OFAC relied on a variety of evidence, including classified information, materials Plaintiff submitted, and foreign policy guidance provided by the Department of State, and came to its conclusion after engaging in interagency consultation. AR1–3.

---

[2] For example, OFAC also found that Plaintiff "materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, Radovan Karadzic," but Plaintiff does not challenge that determination here. *See generally* AR1–3; Pl.'s MSJ at 31–37.

To begin, Plaintiff first argues that sanctioning her "for her mere presence at two events in 2016 and 2018 at which her husband was honored and praised" was unreasonable because she "didn't say a word" at these events and the honoree at these events "was her husband, not some public figure she chose to admire and associate with." Pl.'s MSJ at 31–33.

Plaintiff's focus on these two events ignores the other plentiful evidence that OFAC considered in deciding to deny her delisting request. While OFAC did rely on her "attendance at public events glorifying [her husband's] crimes and legacy," AR21–23, 344–45, 408, 421— including an event where the ICTY's legitimacy was challenged—OFAC also relied on evidence including Plaintiff's statements publicly defending Radovan or distorting facts about the Bosnian war, AR21–23, 158, 203, 276, 303, her public criticisms of the ICTY, AR2, 21–24, 162, 206— including publicly characterizing the ICTY as "illegal" and a "malignant cancer," AR22–23, 162, 206—and her refusal to cooperate with the ICTY's efforts to apprehend Radovan. AR21–23, 159, 182. OFAC also pointed to Plaintiff's in-person contact and correspondence with Radovan, including when she urged her husband to never surrender to authorities. AR17–22. In its denial letter, OFAC explained that "[t]hese actions undermine the credibility of international institutions that contribute to regional stability and are in direct conflict with the goals of the Dayton Accords, as well as the decisions of the High Representative, the Peace Implementation Council or its Steering Board," relating to Bosnia and Herzegovina. AR2.

OFAC also appropriately relied on the State Department's guidance, which advised that removing Plaintiff from the SDN List would be inconsistent with U.S. foreign policy interests in the region. AR26–32, 332–42; *see Pejcic v Gacki*, No. 19-cv-02437 (APM), 2021 WL 1209299 (D.D.C. Mar. 30, 2021), at *8 ("By relying on the opinion of a subject-matter expert like the State Department, OFAC marshaled sufficient support for its determination."); *Karadzic v. Gacki*, 602

F. Supp. 3d 103, 114 (D.D.C. 2022) (finding OFAC did not act arbitrarily and capriciously in its denial determination where some of its decision relied, in part, on a State Department advisory memorandum).

Considering the evidence described above, and even based on the unclassified administrative record alone, the court finds that OFAC considered substantial information, and its ultimate decision was "the product of reasoned decisionmaking." *Motor Vehicle*, 463 U.S. at 52; *see Olenga*, 507 F. Supp. 3d at 280 (D.D.C. 2020) ("Even based on the unclassified administrative record alone, OFAC considered substantial information suggesting that '[plaintiff] is responsible for or complicit in, or has engaged in, directly or indirectly, actions or policies that undermine democratic processes or institutions.'"). OFAC weighed the evidence before it, considered the relevant data, and articulated an explanation establishing "a rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n,* 476 U.S. 610, 626 (1986) (internal quotations marks omitted) (collecting authorities).

Next, Plaintiff distinguishes her case from two cases in which OFAC denied delisting requests from people suspected of helping Radovan Karadzic to evade arrest. In *Pejcic v Gacki*, plaintiff Pejcic—who was part of Radovan's "influential inner circle and a significant part of his core support network"—similarly sought judicial review of OFAC's decision denying his delisting request. *Pejcic*, 2021 WL 1209299, at *3. The court ultimately denied his APA claim, finding that OFAC made a reasonable analysis of the evidence before it when it denied Pejcic's request. *Id.* at *8. Similarly, in *Karadzic v. Gacki*, 602 F. Supp. 3d 103 (D.D.C. 2022)—a case brought by Radovan's brother, Luka—the court found that Luka's statements calling the ICTY an "illegitimate and illegal" court and statements calling Radovan's conviction an "awful and huge

injustice" were a sufficient basis, among other things, for OFAC to continue the sanctions against him. *Id.* at 115.

Plaintiff claims that compared to those cases, her "case represents the thinnest reed yet on which OFAC has attempted to justify its continuing sanctions." Pl.'s MSJ at 32. She argues that, unlike Pejcic, she held no leadership position in any organizations, and unlike Luka, she made no public statements. *Id.* She, again, claims that her "only sin was to be present at the dedication of a plaque to her husband and a political party meeting at which a candidate gratuitously asked her to give his regards to her husband." *Id.*

Plaintiff's attempt to differentiate her case from *Pejcic* and *Gacki* is unavailing. In those cases, as here, OFAC did not rely solely on one piece of evidence to reach its conclusion—Pejcic's petition was not denied solely because of his leadership position, and Luka's petition was not denied on the basis of his public statements alone.

In *Pejcic*, OFAC also relied, in part, on a State Department memorandum that found Pejcic "had failed to distance himself from the legacy of wartime Serbian Democratic Party leaders and continued to lionize them and members of the Janja Detachment in which he served," including by "praising the detachment in speeches at commemoration events in 2015 and 2016." *Pejcic*, 2021 WL 1209299, at *7 (alterations adopted). And though the State Department did note Pejcic's current leadership role in a veterans' organization that "promot[es] an alternative narrative regarding the Serb takeover of" Bijeljina, OFAC credited not just his *role* but the State Department's conclusion that "alternative narratives," such as those espoused by Pejcic, "risk a resurgence that undermines the international community's work to advance the rule of law in Bosnia and Herzegovina." *Id.*

In this case, and as discussed above, OFAC similarly relied on events that Plaintiff attended, public statements she made, and her in-person contact and correspondence with Radovan—actions that OFAC found collectively "undermine the credibility of international institutions that contribute to regional stability and are in direct conflict with the goals of the Dayton Accords, as well as the decisions of the High Representative, the Peace Implementation Council or its Steering Board," relating to Bosnia and Herzegovina.  AR2.  As Defendants point out, Pejcic and Plaintiff both failed to distance themselves from their past support of Radovan and both made statements promoting alternative narratives about the Bosnian war and undermining the legitimacy of international courts.  *Pejcic*, 2021 WL 1209299, at *3, *7; AR21–26; Defs.' Mot. at 43–44.  The court also notes that though Plaintiff claims she did not hold a leadership position, OFAC found that Plaintiff "maintained influence over at least one entity associated with providing support to Radovan."  AR1.

As to her *Gacki* comparison, contrary to Plaintiff's argument, the record indicates that Plaintiff made public statements, as did Luka.  AR21–23.  There, as here, OFAC also relied on evidence that "Luka and Radovan were in communication during Radovan's time in hiding" and pointed to Luka's criticism of the Hague Tribunal that indicted his brother—actions that OFAC found "undermined the delicate balance of peace in the region."  *Gacki*, 602 F. Supp. 3d at 113–14.

In assessing an APA challenge, a court should not "reweigh the evidence and come to [its] own conclusion" but should "assess the reasonableness of [the agency]'s conclusion."  *Pub. Citizen Health Rsch. Grp. v. Tyson*, 796 F.2d 1479, 1495 (D.C. Cir. 1986); *see also Ind. Mun. Power Agency v. F.E.R.C.*, 56 F.3d 247, 254 (D.C. Cir. 1995) (noting that a reviewing court shall not "reweigh the conflicting evidence or otherwise to substitute [its] judgment for that of the

[agency]."). Having considered the record, the court finds that OFAC sufficiently weighed the evidence before it and reasonably relied on it, and its ultimate decision refusing to delist Plaintiff was based on substantial evidence. Accordingly, the court finds that OFAC did not act arbitrarily and capriciously in its decision.

Finally, Plaintiff argues that OFAC is not justified in maintaining sanctions against her because these events occurred "more than 20 years ago." Pl.'s MSJ at 34. She argues that although EO 13304 uses the past tense when authorizing sanctions on persons, *see* EO 13304 (authorizing sanctions against persons determined "*to have* actively obstructed, or pose a significant risk of actively obstructing. . . the Dayton Accords") (emphasis added), OFAC's regulations allow people to "seek administrative reconsideration of their . . . designation or . . . assert that the circumstances resulting in the designation no longer apply" when requesting that the agency rescind their designation. 31 C.F.R. § 501.807 (cleaned up); Pl.'s MSJ at 34. Ultimately, Plaintiff interprets § 501.807 to mean that "where the circumstances resulting in the designation no longer apply, OFAC must justify the continued sanctions on other facts." Pl.'s MSJ at 36–37. Thus, according to Plaintiff, even if she did help her husband avoid arrest over 20 years ago, based on its own regulations, "OFAC must nevertheless justify how the circumstances resulting in her 2003 designation continued to apply more than 15 years after Radovan's arrest and 8 years after his conviction"—both of which "amount to a dramatic change in circumstances in a case in which sanctions were imposed solely for helping him evade arrest." *Id.* at 34.

The court disagrees with Plaintiff's interpretation of the relevant regulations—an interpretation that other courts in this district have already rejected. For example, in *Gacki*, the court explained that "the regulations do not say that OFAC *must* delist an individual when the original circumstances for the designation have changed," instead, "the regulations say that a

designated individual *may* petition OFAC to remove the designation." *Gacki*, 602 F. Supp. 3d at 114 (emphasis added). "This language does not conflict with EO 13304." *Id.*

Plaintiff acknowledges that other courts have rejected this argument, *see* Pl.'s MSJ at 36, and have found that past conduct can be considered when evaluating whether the circumstances resulting in a designation continue to apply. *See, e.g.*, *Basengezi v. Smith*, No. CV 23-1249 (JEB), 2024 WL 1050340, at *7 (D.D.C. Mar. 11, 2024), *aff'd*, No. 24-5130, 2025 WL 457687 (D.C. Cir. Feb. 11, 2025) (similarly noting that "nothing in the regulations compels OFAC to delist an individual who has ceased to engage in previous sanctionable conduct"); *Olenga*, 507 F. Supp. 3d at 281 (holding that a similar provision that empowered OFAC to designate individuals as sanctionable authorized OFAC to designate individuals based on "an action they took in the past"); *Pejcic*, 2021 WL 1209299, at *6–8 (same under E.O. with analogous language). OFAC's conclusion that Plaintiff "engaged in sanctionable conduct in the past is thus sufficient." *Basengezi*, 2024 WL 1050340, at *7.

The court also disagrees with Plaintiff's interpretation of the relevant evidence on which OFAC relied. As the court described above, *see supra* § III.B.ii, OFAC did not rely "solely on [Plaintiff's] 20-year-old conduct in helping her husband evade arrest." Pl.'s MSJ at 37. It appropriately considered other past conduct, as well as more recent actions, in reaching its conclusion. Among the more recent actions is Plaintiff submitting false or misleading information concerning her contacts with Radovan while he was in hiding. AR2, 17, 62, 66. In the delisting process, a SDN "bears the burden of showing that changed circumstances warrant withdrawing [her] designation." *Joumaa v. Mnuchin*, 798 F. App'x 667, 668 (D.C. Cir. 2020) (citing 31 C.F.R. § 501.807). "OFAC's findings that [Plaintiff] provided demonstrably false and misleading

information . . . are relevant to the conclusion that [she] failed to carry [her] burden." *Id.* (citations omitted).

In sum, OFAC complied with its procedures when it granted and adjudicated Plaintiff's delisting request and made a decision that was reasonable and well-supported by the record. The court finds no reason to disturb the agency's conclusion.

### C. The Court Will Deny Plaintiff's Motion for Mediation

Finally, while the instant motion was pending, on June 1, 2025, Plaintiff moved for mediation under Local Rule 84.4, to which Defendants object. *See* Pl.'s Mot. for Referral to Mediation Program, ECF No. 33. Plaintiff argues that "[m]ediation would give the Trump Administration the opportunity to weigh in on whether it wishes to continue to take the position adhered to by the former administration" and allow the parties "to see if there are remedial steps that [Plaintiff] can take" to address any ongoing sanctions concerns. *Id.* at 2. Defendants object because they seek to dismiss Plaintiff's case and contend that mediation would not be productive. *See* Defs.' Opp'n to Pl.'s Mot. for Referral to Mediation Program, ECF No. 35. Although the court may, in its discretion, require the parties to participate in mediation, *see* LCvR 84.4(a)(2), it declines to do so here. *Konarski v. Donovan*, 763 F. Supp. 2d 128, 137 (D.D.C. 2011) (quotation marks omitted).

### IV. CONCLUSION

For these reasons, the court will GRANT Plaintiff's Motion for Reconsideration but will DENY Count II of Plaintiff's motion for summary judgment and will GRANT Defendants' cross-

motion for summary judgment as to Count II. An Order will accompany this Memorandum Opinion.

Date: July 28, 2025

                                        *Tanya S. Chutkan*
                                        TANYA S. CHUTKAN
                                        United States District Judge